

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CATHERINE FAHY, individually and )
as special administrator for the Estate )
of DALE FAHY, deceased, )
 )
        Plaintiff, )
 )
        v. )    No. 01 C 7532
 )    Wayne R. Andersen
JAMES PAGE, warden at Stateville Correctional )    District Judge
Facility, JOSEPH SMITH, medical director at )
Stateville Correctional Facility, STEVEN EISENBERG )
director of psychology and or psychiatry at Stateville )
Correctional Facility, AMAR CHAWLA, doctor at )
Stateville Correctional Facility and JOHN DOE, )
correctional officer at Stateville Correctional Facility, )
 )
        Defendants. )

## MEMORANDUM OPINION AND ORDER

Catherine Fahy has sued Defendants under 42 U.S.C. § 1983, alleging that Dr. Joseph Smith,

Warden James Page, Steven Eisenberg, and Dr. Amar Chawla, collectively ("Defendants"), deprived

her late husband, Dale Fahy, of his constitutional rights while he was in custody of Stateville

Correctional Facility ("Stateville"). Plaintiff alleges that, because of Defendants' inaction, Fahy's

medical needs were not met and, as a result, Fahy hanged himself. Currently, before the court is

Defendants' motions for summary judgment pursuant to Federal R.Civ. P. 56. For the reasons stated

below, Defendants Joseph Smith, James Page, and Steven Eisenberg's motions for summary

judgment are granted and Defendant Amar Chawla's motion for summary judgment is denied.

## BACKGROUND

Dale Fahy was a resident of Will County, Illinois. At the time of Fahy's death, Defendants were all working at Stateville. Joseph Smith was the medical director, James Page was the warden, Steven Eisenberg was the director of psychology, and Amar Chawla was a psychiatrist.

On December 18, 1989, Fahy pled guilty to two counts of aggravated criminal sexual assault after being charged with molesting two children. He was sentenced to fifteen years imprisonment. Fahy served seven and one half years in prison and, under the terms of his sentence, was to remain on parole until September 28, 1999. A condition of his parole was that, if he violated any criminal laws, he would return to prison to serve the remainder of his parole. Fahy was to report to a parole officer once a week. In June or July 1999, Fahy's one year old daughter was believed to have been sexually abused and Fahy, who was suspected of the abuse, was told he could no longer stay at his home. Fahy failed to report to his parole officer, and he was arrested by Downer's Grove police on July 15, 1999 for violation of his parole and for unlawful possession of a firearm by a felon.

When he was taken into custody, he stated he intended to commit suicide. Fahy was taken to Good Samaritan Hospital and the records there indicate that Fahy was depressed and suicidal. He was placed on suicide watch by the Downer's Grove Police Department. On July 16, 1999, Fahy was transferred to the Will County Sheriff's Department and was again placed on suicide watch. On July 22, 1999, Fahy was transferred to the State of Illinois' Department of Corrections in Danville, Illinois ("Danville"). At Danville, Fahy, once again, was on suicide watch. He was placed on 50 milligrams of Sinequan, which is a psychiatric medication that, taken in low doses, serves as a sleep

2

aid and, when taken in higher doses, is an antidepressant. After July 29, 1999, Fahy was not again placed on suicide watch. On September 15, 1999, Fahy was transferred to Stateville.

As a practice at Stateville in 1999, if prison officials knew that a prisoner had expressed thoughts of helplessness, hopelessness, worthlessness, or suicide, the prisoner was placed in a special psychiatric care unit within the prison. This placement was usually initiated by the treating psychiatrist. The medical director and warden would have been alerted of a new inmates' psychiatric issues only if their intervention was needed to assist in placing the inmates. Non-urgent medical and psychological matters were discussed at the medical director's monthly staff meetings. If the treating psychiatrist believed that an inmate would benefit from seeing a psychologist or social worker, a mental health referral form ("Referral Form") was generated and sent to the psychology department. Once the psychology department received this Referral Form, the inmate would then be assigned to a psychologist or social worker for continued therapy. The Medical Progress Note Form ("Progress Form") was an internally used document for the psychiatrists to record their impressions of visits with patients. On the Progress Form, there is a section to indicate whether the psychiatrist believed the patient should receive further assistance from the psychology department. However, the Progress From was kept within the inmate's psychiatry file and was generally not forwarded to other departments like the Referral Form was. Chawla completed a Progress Form during his meetings with Fahy on September 15, September 21, and September 25, 1999. On the latter two forms, Chawla indicated that Fahy may benefit from continued therapy through the psychology department. However, there is no evidence or assertion that Chawla completed a Referral Form or that the psychology department was made aware of any need for involvement.

Under Illinois law, when an inmate on psychotropic medication arrives at a prison, the inmate must be seen by a psychiatrist within twenty-four hours. Fahy was on Sinequan when he arrived at Stateville and, accordingly, on the very day of his arrival the treating psychiatrist, Chawla, met with him. Chawla determined that Fahy was not in any imminent danger to himself or others, he continued Fahy's prescription, and scheduled him for a follow up appointment. Chawla testified that he would not have refilled that prescription for a suicidal patient because it is lethal if taken in overdose. When inmates transfer between facilities, their files and medical records are transferred with them, but Chawla testified that initially he was not informed that Fahy had a history of suicide attempts and that the July 1999 police reports were not included in Fahy's medical file. However, Chawla admits that, in a closer examination of Fahy's file, he became aware of Fahy's previous suicide-watch status. (Chawla Dep Vol. I at 81, 90.) Upon discovering this, Chawla expedited Fahy's next appointment to six days later, as opposed to the usual three or four weeks that normally passes before a new inmate receives a follow up evaluation. (Chawla Dep. Vol II at 114-115). Chawla met with Fahy on September 21 and September 25, 1999 and, after both meetings, Chawla confirmed his initial diagnosis that Fahy may have had an adjustment disorder and was not suicidal. Chawla stated he did not believe Fahy was suicidal because Fahy did not express ideas of hopelessness, helplessness, or worthlessness and that "his affect was full or broad in range and mood was euthymic." Chawla also affirmed that had he detected suicidal ideations, he would have placed Fahy on suicide watch at Stateville. (Chawla Dep, II, p 74). Dr. Smith, Warden Page, and Mr. Eisenberg claim they never met Dale Fahy, nor were they involved in his treatment at Stateville in any way. (Pl's Addtl. Stmt. 54).

4

Fahy wrote seemingly unanswered letters to his wife expressing his anticipation and excitement to be released. On Thursday, September 28, 1999 Fahy received a detention order. It was issued from the Circuit Court of Dupage County and stated "The Court having reviewed the People of the State of Illinois' Sexually Violent Person's petition and the documents incorporated therein, hereby determines that there is cause to believe that Dale Robert Fahy, [] is eligible for commitment under subsection (f) of section 35 of the Sexually Violent Persons Commitment Act, 725 ILCS 207." The court then ordered Fahy to be detained by IDOC and to appear in court on September 30, 1999. Stateville medical officials were not notified that Fahy was served with the order, nor is there evidence that any prison official saw Fahy acting differently. Later that day, Fahy hanged himself. Both Plaintiff and Chawla stated they believe that it was the detention order that pushed Fahy to kill himself and in Chawla's professional judgment, the order of detention "absolutely devastated [Fahy][to] where he just gave up." (Plf.'s Resp. Chawla's Stmt. 44.)

## DISCUSSION

In order for a party to prevail on a motion for summary judgment, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, [must] show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). At this stage, we may not weigh the evidence or make any credibility determinations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). We view all evidence and draw all inferences in favor of the nonmoving party. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. *Id.*

Additionally, when "undisputed facts give rise to disputed inferences," summary judgment is not appropriate. *Harley-Davidson Motor Co., Inc. v. Powersports, Inc.*, 319 F.3d 973, 989 (7th Cir. 2003) (ruling that "the choice between reasonable inferences from facts is a function of the fact-finder"); *See also Ramirez v. Nutrasweet Co.*, 1997 U.S. Dist. Lexis 17111, at *7 (N.D. Ill. Oct. 27, 1997) ("if the evidence presented by the parties is subject to conflicting interpretations, or if reasonable minds could differ as to its significance, summary judgment must not be granted") (citing *O'Connor v. Chicago Transit Auth.*, 985 F.2d 1366 (7th Cir. 1993)). Initially, the moving party must inform the court of the basis for the motion, but it is then the non-moving party's obligation to present specific facts showing there is a genuine issue for trial. FED. R. CIV. P. 56(e). A party must present more than a scintilla of evidence to defeat summary judgment and may not rest upon "the mere allegations or denials of the adverse party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *see also Senner v. Northcentral Technical College*, 113 F.3d 750, 757 (7th Cir. 1997).

Plaintiff asserts that Defendants violated § 1983 because they knew or should have known of Fahy's suicidal tendencies and their deliberate indifference caused Fahy's suicide. Defendants argue that summary judgement is appropriate because Plaintiff cannot establish a Section 1983 deliberate indifference violation. The Eighth Amendment places a duty on prison officials "to protect prisoners from violence at the hands of other prisoners" and themselves. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (internal citations omitted). Inmates may challenge the conditions of their confinement, *Wilson v Seiter*, 501 U.S. 294, 299-300 (1991), or the conduct of prison officials. *Farmer*, 511 U.S. 825. To prove a Section 1983 claim based upon a violation of the Eighth Amendment, a plaintiff must establish both an objective and a subjective standard. First, the harm the prisoner was exposed to must be so objectively serious

6

that it would likely result in a substantial risk to the prisoner's health or safety. Second, the individual defendants must be shown to have been deliberately indifferent to that risk. *Collins v. Seeman*, 42 F.3d 757 (7th Cir. Sep. 11, 2006)(citing *Matos ex. rel. Matos v. O'Sullivan*, 335 F.3d 553, 556 (7th Cir. 2003); *Farmer*, 511 U.S. at 832.

In the case of a suicide, the first element is automatically met "as [i]t goes without saying that 'suicide is a serious harm.'" *Id.* (citing *Sanville v. McCaughtry*, 266 F.3d 724, 733 (7th Cir. 2001)). A plaintiff may establish the second element by showing the prison officials knew of, and disregarded, a serious medical need about which they had knowledge. *Farmer*, 511 US at 855 (stating that there can be no liability under the Eighth Amendment for a prison official unless the official knows of and disregards an excessive risk to an inmate's health or safety; "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.") Eighth Amendment liability requires "more than ordinary lack of due care for the prisoner's interests or safety." *Farmer*, 511 US at 835. The deliberate indifference standard "imposes a high hurdle for a plaintiff to overcome." *Collins*, 42 F.3d at *12. It is not enough that a prison official "*should have*" been aware of a danger; the official must know, he must have failed to connect the risk that may result in injury, and he also must have failed to act to avoid the risk. *Id.* at *8 (referring to *Estate of Novack ex rel. Turbin v. County of Wood*, 226 F.3d 525, 529 (7th Cir. 2000)); *Haley v. Gross*, 86 F.3d 630, 640 (7th Cir. 1996); *see also Lewis v. Richards*, 107 F.3d 549, 553 (7th Cir. 1997) (stating to incur culpability, would of or should of known is not enough.) Liability cannot attach if "the defendants simply were not alerted to the likelihood that [the inmate] was a genuine suicide risk." *Id.*; *Boncher ex rel. Boncher v. Brown County*, 272 F.3d 484, 488 (7th Cir. 2001). Finally,

"prison officials who act reasonably cannot be found liable [or deliberately indifferent] under the Cruel and Unusual Punishments Clause. *Farmer*, 511 US at 845.

In the case at bar, Plaintiff states that all Defendants knew or should have known of Fahy's suicidal state of mind because they were each in a direct or supervisory position to evaluate Fahy's state of mind. Plaintiff asserts that Defendants' failure to recognize Fahy's problems resulted in his suicide. It is not enough, however, that a defendant ought to have had the knowledge in order to establish an Eighth Amendment violation. Rather, Plaintiff must present evidence to establish that each Defendant had actual knowledge of Fahy's suicidal tendencies and then consciously chose to disregard them. We examine each defendant, in turn, to determine whether each had knowledge of Fahy's condition.


I. Defendants Smith and Page

Plaintiff asserts that Smith, in his position as medical director, should have had knowledge of all psychiatric patients. Smith contends that, because there is no evidence to support that he was aware of Fahy's arrival and mental condition, he cannot be liable. We agree.

Fahy was on psychotropic drugs and was seen by psychiatrist, Dr. Chawla, within hours of his arrival at Stateville. At the initial meeting, Dr. Chawla did not find Fahy to be suicidal and did not place him in the infirmary because of his condition. Accordingly, there was no need to inform the medical director of Fahy's arrival because he did not require any special provisions or placement within the infirmary. Smith contends that, absent the need for his intervention or some special risk that Fahy presented, he was not immediately informed of a new inmate's arrival at Stateville. Although he would be apprised of all non-urgent medical conditions at his monthly medical meetings, that meeting did not occur during Fahy's time at Stateville. There is

no affirmative evidence to establish that Smith had knowledge of Fahy. For example, there is no

evidence of chart reviews or examination records to show that Smith examined Fahy or that he

was aware that Fahy was placed at Stateville. Further, there are no allegations that Smith ever

monitored Fahy's well-being. Plaintiff's assertion that Smith should have had knowledge is

simply not enough to establish deliberate indifference. Because Plaintiff has offered nothing to

show us that Smith had knowledge of Fahy's risk to himself, Smith cannot be considered to have

been deliberately indifferent.

Similarly, Warden Page may not be considered liable for Fahy's suicide. Plaintiff states

that Page is liable because, as warden, he implemented policy and procedure, and those policies

and procedures were inadequate to address Fahy's medical needs.

It is well established that an individual cannot be held liable in a Section 1983 action

unless he caused, or participated in, the constitutional deprivation. *Pepper v Oak*, 430 F. 3d 805,

810 (7thh Cir. 2005)(citing *Wolf-Lillie v Sonquist*, 699 F.2d 864 869 (7th Cir. 1983). Further, in

order to state a claim against a supervisory defendant in his individual capacity, the plaintiff must

allege facts which show that the supervisory defendant knew of, and consented to, the alleged

constitutional deprivation. *Chavez v. Ill. State Police*, 251 F.3d 612, 652 (7thh Cir. 2001).

In this case, Plaintiff has failed to allege any affirmative link between Fahy's suicide and

Page. Page was not at all familiar with, nor had he ever met, Fahy. Plaintiff has not alleged that

Page reviewed any reports regarding Fahy's arrival or his medical condition. There is nothing to

suggest that Page was personally aware that Fahy was even at Stateville, much less that he was

capable of seriously harming himself. Also, there is no support that Page knew of, and consented

to, the alleged constitutional deprivation. Absent that showing, Page cannot be considered to

have been deliberately indifferent. Furthermore, because Section 1983 will not support a

*respondeat superior* or agency claim, Smith and Page cannot be held liable for Fahy's suicide. *Polk v. Dobson*, 454 U.S. 312 (1982).

II. Defendant Eisenberg

Steven Eisenberg was the head of the psychology department at Stateville, and Plaintiff contends that Eisenberg is liable for Fahy's suicide because, as supervisor of the department, he should have known of Fahy's condition and, in turn, taken the appropriate measures to prevent his suicide. Plaintiff asserts that, because Eisenberg had authority to place an inmate in the infirmary and he failed to do so, he is deliberately indifferent. Eisenberg argues that the psychology department was not involved in Fahy's treatment, nor did his staff have knowledge of Fahy's suicidal tendencies. Thus, Eisenberg contends he is precluded from liability for Fahy's suicide.

Plaintiff's arguments are misplaced. As noted, when an inmate first entered Stateville in 1999, if the psychiatrist perceives the inmate to be in need of psychological services, Eisenberg would be notified through a Referral Form. Eisenberg testified, however, that his department did not necessarily treat all psychiatric patients, as Referral Forms were not completed with every patient with mental health issues. Rather, it was the psychiatrists who determined whether the psychology department needed to be involved. Plaintiff has not established that Eisenberg was in a position to treat Fahy or that he reviewed his file while Fahy was alive. Further, there is no testimony or evidence to indicate that Referral Form was completed or that Eisenberg was personally made aware of Fahy's existence. The only indication of the potential involvement from the psychology department is Chawla's notes in the Progress Form. As stated, this form is kept only in the inmates' psychiatry folder and not shared with other prison departments. An

10

official Referral Form, that alerts the psychology department that there is a need for further therapy was not completed. Thus, Eisenberg was not apprised of Fahy's mental health issues. Eisenberg admits that Fahy saw a social worker for the purpose of discharge planning, but he maintains that he never knew of, or spoke with, Fahy about his mental health. (Eisenberg Dep150-53).

Plaintiff must present evidence that Eisenberg was aware of the prisoner's psychological history. *Id*; *See also Matos ex. rel. Matos v. O'Sullivan*, 335 F.3d 553, 557-58 (7th Cir. 2003)(stating "not every prisoner who shows signs of depression or exhibits strange behavior can or should be put on suicide watch.) Plaintiff again fails to meet her heavy burden and has failed to present any supported facts or evidence to show that Eisenberg had actual knowledge of Fahy or his condition. Simply because the prisoner had consulted with a prison psychiatrist or psychologist does not, alone, indicate that all Defendants had sufficient knowledge of a risk. *Collins*, 42 F.3d at *9. Therefore, deliberate indifference is also not established as to Defendant Eisenberg.

III. Defendant Chawla

Finally, Plaintiff claims that Chawla, the examining psychiatrist, is liable because he knew of Fahy's history and psychiatric needs and was deliberately indifferent to them. Chawla argues that summary judgment is appropriate because, after he reviewed Fahy's file and examined him on three separate occasions, Chawla found no indication that Fahy would seriously harm himself. Therefore, Chawla states, he was without the requisite knowledge that Fahy posed a serious risk to himself.

An assertion of malpractice or that he ought to have known, alone, does not establish the deliberate indifference necessary to sustain an Eighth Amendment claim. *Collignon v. Milwaukee County*, 163 F.3d 982, 990 (7th Cir. 1998); *Steele v. Choi*, 82 F.3d 175, 178 (7th Cir. 1996). However, liability attaches when a defendant ignores actual knowledge of a substantial risk of serious harm. *Id.*(citing *Haley v. Gross*, 86 F.3d 630, 641 (7th Cir. 1996).

In this case, Chawla used his professional judgment and, based on his examinations and assessments, he felt there was no substantial risk that Fahy would commit suicide. As stated, professional judgment should not be scrutinized in an Eighth Amendment context. But, because Chawla was aware of Fahy's previous suicidal ideations, we believe that Chawla was on notice that Fahy may have been a risk to himself. The determination of whether Chawla's knowledge of Fahy's history and medical needs was sufficient to establish deliberate indifference presents a factual question that should be reserved for the trier of fact. Thus, summary judgment, as to Chawla, is not appropriate.

## CONCLUSION

Construing all relevant facts in a light most favorable to Plaintiff, we conclude that a fair-minded jury could not find that Smith, Page, or Eisenberg were deliberately indifferent to Fahy's suicidal state of mind. Furthermore, because Chawla was aware of Fahy's history, we believe there are enough facts to question whether Chawla had the requisite knowledge to establish deliberate indifference. Accordingly, Smith, Page and Eisenberg's motions for summary judgment are granted and Chawla's motion for summary judgment is denied.

For the reasons stated above, Defendants Joseph Smith, James Page, and Steven Eisenberg's respective motions [63] [73] [73] for summary judgment are granted and Defendant Amar Chawla's motion [78] for summary judgment is denied.

It is so ordered.

_Wayne C. Andersen_

Wayne R. Andersen
United States District Court

Dated: _January 4, 2007_